Jay H. ADAMS, Michael C. Cushing, Robert R. Cushing, Jr., Brian Cullen, Medora Hamilton, Neil A. Linsky, Ann Carol Riley, Stephen H. Roth, Kevin J. Hopkins and Mary F. Gregory,

v.

George SAMPSON, Sheriff and Rockingham County Superior Court.

No. CV 78–7.

United States District Court,
D. New Hampshire.

June 29, 1978.

Brown & Nixon, P. A. by Randolph J. Reis, Manchester, N. H., for Adams.

Edward A. Haffer, Asst. Atty. Gen., Concord, N. H., for Sampson.

## OPINION

REAL, District Judge, Sitting by Designation.

Petitioners bring this action for issuance of a Writ of Habeas Corpus claiming a Constitutional defect arising out of a conviction for contempt of court.

The contempt of court citations and convictions arise out of alleged violation of a temporary injunction issued upon an ex parte petition of the Public Service Company of New Hampshire (hereafter PSC). The order enjoined the petitioners herein among others from—as pertinent here—entry upon, or occupying the "site of the Seabrook Nuclear Station as identified in the description attached hereto as Exhibit 1 and the plan attached hereto as Exhibit 2, without the express permission of Proper-

ties, Inc. and Public Service Company of New Hampshire." Attached as exhibits 1 and 2 were, respectively, a metes and bounds legal description of the property and an aerial topographic map with the restricted area shaded darker than the surrounding property.

The injunction was issued on Friday, August 20, 1976 and served personally on petitioners, Neil A. Linsky and Stephen Roth. The remaining petitioners, Jay H. Adams, Michael Cushing, Robert Cushing, Mary Gregory, Medora Hamilton, Kevin J. Hopkins, Brian Cullen and Ann Carol Riley were not served although petitioner, Robert Cushing claims to have seen and read the injunction prior to August 22, 1976 when the events constituting the contempt are alleged to have occurred.

Petitioners were arrested on August 22, 1976 for criminal trespass after having gone upon the premises of the Public Service Company of New Hampshire as part of a demonstration in opposition to the building of a nuclear-powered electricity generating facility referred to as the Seabrook Nuclear Station.

The prosecution for criminal contempt was commenced by affidavit of the arresting officer of each of the petitioners. Petitioners were brought before the Superior Court by Warrant of Attachment commanding appearances on August 23, 1976.

Petitioners denied the contempt and demanded a jury trial. The judge (who had issued the injunction) announced he would not in any event impose a sentence in excess of six months and thereupon denied petitioners demand for a jury trial.

Trial upon the contempt commenced September 1, 1976 without a jury, and with petitioners, Neil A. Linsky, Stephen Roth, Jay H. Adams, Michael Cushing, Robert Cushing, Mary Gregory, Medora Hamilton and Kevin J. Hopkins proceeding in pro se. Petitioners Brian Cullen and Ann Carol Riley were represented by counsel.

Petitioners who proceeded in pro se had had counsel at their arraignment but for reasons which are not totally clear in the

record, counsel would not proceed in their representation. The Court refused to continue the case, either for the procurement of new counsel or for preparation by petitioners to proceed pro se. The Court did however, require petitioners' counsel at arraignment—one Mr. Thomas Lesser—to act as adviser to petitioners during the trial.

On September 8, 1976 findings of guilty were entered as to each petitioner and petitioners were then sentenced.

On appeal to the Supreme Court of New Hampshire the convictions of criminal contempt were affirmed as to each petitioner and that brings them to this Court with various claims of constitutional deficiency in their conviction. Petitioners pray for the issuance of a Writ of Habeas Corpus requiring vacation of their conviction.

Petitioners having exhausted all of their available state remedies jurisdiction in this Court is proper pursuant to 28 U.S.C. § 2254(b).

28 U.S.C. § 2254(d)(8) provides in pertinent part

§ 2254 State custody; remedies in Federal Courts

\* \* \* \* \* \*

(d) In any proceeding instituted in a Federal Court by an application for Writ of Habeas Corpus by a person in custody pursuant to the judgment of a State Court, a determination after a hearing on the merits of a factual issue, made by a State Court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall submit—

\* \* \* \* \* \*

(8) or unless that part of the record of the State Court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal Court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

Respondent has been required to, and has filed the record of the entire proceeding in the New Hampshire Supreme Court. That record includes the opinion of the Supreme Court in the *State of New Hampshire v. Linsky et al.,* decided October 31, 1977, N.H., 379 A.2d 813 and the record of the proceedings against these petitioners in the Superior Court.

Because this Court can dispose of this matter upon the issue of notice and a record which clearly shows an "invited contempt" provoked by the beneficiaries of the injunction—the PSC—, there is no need to reach the other serious constitutional deprivations claimed by petitioners.

## NOTICE AND CONTEMPT

Contempt though elusive of real definition has generally been accepted as conduct which affronts the administration of justice. Because the parameters are vague and the consequences so important to the continued ability of the judicial system to cope with the many problems brought to it for resolution it has largely not been the subject of legislation. So it is in New Hampshire. As such, contempt in New Hampshire has grown upon common law roots. Certainly given its common law heritage no one can argue that petitioners conduct if in willful confrontation of the injunction issued by the Superior Court could and should be punished for criminal contempt.

The nature of—and the sometimes summary and awesome way in which punishment can be imposed in—contempt cases requires that those charged with violation of an injunction as contempt be afforded due process guaranteed by the 14th Amendment of the United States Constitution.

**236**

■ Due process as it impacts upon claimed violation of an injunction requires the following elements:

1. An order issued by a Court of contempt jurisdiction.
2. Notice of the contents of the Order to the alleged contemnor.
3. Willful disobedience of the Order.

It is with the required notice of the injunction necessary to engage the contempt power of the court that petitioners grounded their defense. At least with reference to petitioners Jay H. Adams, Michael Cushing, Mary Gregory, Medora Hamilton, Kevin J. Hopkins, Brian Cullen and Ann Carol Riley this Court agrees that notice—if any—given to these petitioners is constitutionally defective.

■ When it is remembered that this injunction was obtained ex parte without the knowledge or participation of these parties, the nature of the proof upon which the convictions of contempt are grounded is eloquently absent. At trial no one testified that—these particular petitioners were at a place where they could have seen the sparsely posted copies of the injunction. Neither were petitioners identified as being at a place where they would be able to hear the broadcast of the injunction[1] at any time the broadcasts were being made. Absent any proof of necessary actual notice to petitioners let alone proof beyond a reasonable doubt of the requirement—the convictions of petitioners, Jay H. Adams, Michael Cushing, Mary Gregory, Medora Hamilton, Kevin J. Hopkins, Brian Cullen and Ann Carol Riley are constitutionally defective and must be vacated.

## INVITED CONTEMPT

■ The convictions of petitioners Neil Linsky, Stephen Roth and Robert Cushing must be vacated because the record does not support the requirement that the violation of the injunction be wilful. The proceeding against petitioners was for criminal contempt and that action requires wilfullness i. e. that petitioners intended to violate the prohibitions of conduct placed upon them by the injunction.

The evidence presented on this question is uncontradicted. As petitioners—together with other demonstrators—were proceeding along the B & M right of way[2] they were confronted by a chain placed across the tracks and attached to a tree within the right of way. Behind this chain and on the B & M premises there were stationed police officers who had been invited to these premises by PSC. Off of the right of way PSC employees had placed a snow fence leaving an opening between the snow fence and the chained portion of the right of way. The description by the witnesses is that there was thereby created a "funnel" to an area surrounded by police officers.[3]

■ Faced with this scene and the possibility of a confrontation with the police officers if they broached the chain and continued down the right of way; petitioners and the other demonstrators—after negotiation with PSC—accepted what must have—from the evidence—appeared to be an invitation to funnel across PSC property suffering an arrest for criminal trespass. This the petitioners intended to do and it is clear they were willing to suffer the consequences of the criminal trespass statutes of the State of New Hampshire. Given the fact that a clear track with police officers stationed along the premises of PSC covered by the injunction rather than on the premises of the B & M Railroad not covered by the injunction the only reasonable conclusion is that under the guise of suffering

1. The evidence is unclear whether the entire injunction was read or even if vital prohibitions upon the conduct of the persons assembled adjacent to the premises of Seabrook Nuclear Station on the day were understandable. It is difficult to comprehend how the metes and bounds could clearly be spelled out in a broadcast and certainly the topographic map could not be broadcast in any manner.

2. These premises were not part of the injunction.

3. These police officers were also invited to the premises by PSC to aid the cause of PSC to keep demonstrators off its premises.

an arrest for criminal trespass petitioners were lured to protected premises in what this Court chooses to label as "invited contempt." As unlawful entrapment when performed by law enforcement officers negatives the element of intent so also invited contempt absent countervailing circumstances not present here when engaged in by the beneficiary of an injunction must as a matter of law negative the necessary willfullness to constitute a contempt. The failure of New Hampshire Courts to recognize that principle as impacting on petitioners intent makes these convictions constitutionally impermissible.

The Writ shall issue and the convictions of the petitioners are vacated.